Now just so that we're clear on this, my understanding is the way parties have designated their time. We do have a number of cases that have been consolidated. So we have appeals and counter and cross appeals. So we've got 22-1782, 22-1783, 22-1784. Okay so we've got Mr. Katz on video. We're going to move a chair now. It's sort of covering your face, Mr. Katz. Okay, I can see you well now, thank you. Can everyone see him? Okay, Mr. Katz has designated 12 minutes. And I think you had a question, and I believe that the clerk answered the question. All of your time is total, so if anyone's reserving any time for rebuttal, it comes out of the time. So Mr. Katz, you have 12, Mr. Rosenfeld, you have eight. Yes. And Ms. Sheehy, I guess you've got 20. So as far as I know, that's my understanding, yeah. So, okay, and I think that we decided that, was Mr. Katz going to go first? Correct, Your Honor. Yes, Your Honor. All right, so now Mr. Rosenfeld, can you see okay, everything? Yes, I can see them and- Okay, all right, I know. Okay, so Mr. Katz, 12 minutes, any time, do you wish to reserve any time for rebuttal? Yes, I'd like to reserve six, Your Honor. How many, six? Six. Okay, go ahead, state your appearance. Thank you, Your Honor. Stephen Katz, on behalf of Nexstar Broadcasting, may it please the court. I don't want to belabor the briefs, but I would like to start by addressing an issue raised for the first time in reply by the union. And it goes to appellate jurisdiction, so I think it's a very, it's a significant issue. For the first time in reply, the union is making an extraordinary circumstances argument to establish appellate jurisdiction, notwithstanding the fact that its points were never raised before the board. No exceptions, no motion for reconsideration, nothing. And I believe because of that- Is this the Thrive issue? In part, yes. Okay. And I believe the board concurs with Nexstar, there is no appellate jurisdiction. But I wanted to point out in particular, there's a new argument in reply from the union. And I think that argument basically presents the court with a double waiver. First prong of waiver is it was raised for the first time in reply. This is an issue that any reasonable practitioner would have known should be addressed in an opening brief, particularly given the obligation to address appellate jurisdiction. But here, your honors don't have to ponder the metaphysics of what is a reasonable appellate practitioner because Nexstar's brief raises the issue and it was filed about a month before the opening brief of the union. So when the union filed its opening brief, it knew this was an issue. You'll find no discussion of the issue in that opening brief. No opportunity for Nexstar to address these arguments in reply. No opportunity for the board to address these arguments in its respondent's brief. It's only raised in a reply brief that the union files about a month after Nexstar's brief, which was the penultimate brief in the sequence. So it was literally the issue was held until the final brief and no one has an opportunity to address the argument except here and now, which is why I'm addressing it. So similarly on those grounds, it should be disregarded. I can cite thousands of decisions from this circuit where issues that should have been raised in an opening brief and were not but are only raised for the first time in reply are deemed forfeited. But there's a second ground of forfeiture of waiver of the union's appeal and that goes to the merits. The gist of the newly raised argument is that the timing sequence between a due date for a petition for review and the due date for a motion for reconsideration to raise these issues before the board are such that it eliminates an opportunity to file a motion for reconsideration. Well, it has been established for at least 50 years that I know of that in a situation where there's a board decision and a petition for review is filed, there is concurrent jurisdiction in the Court of Appeals and the board for purposes of the board considering modification or reconsideration of its ruling. And I'll cite a couple of cases for the court on that. Fifty years ago, the Seventh Circuit decision in Cronenberger, 496 F. 2nd, 18, squarely so holds. The Sixth Circuit agrees in United Automobile, Aerospace, and etc., 677 F. 3rd, 276, 2012. There's concurrent jurisdiction and therefore the union had an opportunity after they filed the petition for review to file a motion for reconsideration and give the board some kind of opportunity to weigh in on its issues and to establish a record for this court. It declined to do so. Mr. Katz, was there a deadline? Was the standard under the normal process, would the deadline for the motion to reconsider have been sometime in August 2022? It would have been 28 days after the decision, Your Honor. I can't speak to August. I'd have to go back to the brief and constructive timeline. If the make-all order was July 27, 2022, would the deadline for the reconsideration have been approximately, as you said, 28 days later? It would have been approximately around the 21st of the next month. The new decision we mentioned was in November 2022, correct? Correct. So is what you're saying that the jurisdiction that was maintained by the board was sufficient for the union to seek leave to file a late motion for reconsideration? I believe there's a strong argument that there could have been, and this, but I believe is a weasel word, and a weasel word points to the first waiver issue. Had this issue been squarely addressed in the opening brief in a forthright fashion, the parties would have had an opportunity to hash this out and address it rather than having to address it. I certainly see no legal argument of any kind in the union's brief that would somehow establish that they would be unable to seek reconsideration at that point. If the board had modified, there's a newly risen ground, and if there's truly a newly risen ground for reconsideration, one would think that they would have an opportunity to do so. Okay, since you're wanting to save time, let's assume we uphold the board's finding. This is a hypothetical that you violated Section 8A.1 because you disparaged and denigrated the union. Does your affirmative defense that the union bargained in bad faith excuse your violation of that act? And what do you make of the board's holding in Plumbers Local that one unfair labor practice does not excuse another? One unfair labor practice does not excuse another. That's true. But on the other hand, in evaluating whether a practice is an unlawful labor practice, the entire fabric of the negotiations, the conduct of both parties, has to be considered. And if, as Nexstar contends, the union was insisting that it be complicit in collecting an excessive and illegal initiation fee, and et cetera, that colors the entire... plausibly colors. It could make a difference in the determination that there was an unfair labor practice because it is, at the end of the day, a totality of the circumstances test. Well, you're getting close to five minutes unless the panel's got questions. Let me ask one question. I want you to focus on the board's finding, the 8C finding, that there was an implied promise made. I'd like to get your view on why statements such as exorbitant initiation fees and due highway robbery were bargaining in your favor, why all those are not sufficient to demonstrate an implied promise. Because if, in fact, the fee is exorbitant, they're truthful statements. Again, that colors the analysis, and I'm not suggesting on this record that your honors can conclude it was an excessive initiation fee. It's ambiguous. There's no clear case law saying that a fee of this magnitude, approximately three weeks of salary, passes muster. There are cases in the three-, four-, five-week range where courts have held the fee was excessive. But that record has to be developed. It has to be developed, including what are the fees of other locals for the international market. But it is an implied promise that we're going to fight to make the fees more palatable in next year's view, right? Maybe and maybe not. But, again, without the full context, it's hard to review the decision because certainly there's no explicit language, we're going to knock the fees down. The explicit language is we object to this, we think this is too much. The bargaining moves are not attempting to negotiate over the fee. Right. Somebody said we don't want to be a part of it. Right. We think it's too much, and we're going to do our best to essentially fight for you and make the fees more palatable. Right. And you're saying that that's not sufficient, at least by the substantial evidence review standard, not sufficient to demonstrate an implied promise because the statements are true? Well, because, Your Honor, respectfully, applying substantial evidence review under these circumstances is what philosophers call a category mistake. And I know I'm eating into my time, but let me just propose a hypothetical that crystallizes this. Imagine you had a trial judge who fervently believed that defendants are not allowed to introduce evidence on new points. They can either directly rebut the plaintiff's evidentiary points, plaintiff says the light was green, defendant can say prove the light was red, but other than that, they can't introduce other facts, but they can argue the law. That judge would doubtless turn out decision after decision that is supported by substantial evidence in the record. The problem is substantial evidence review would be strikingly inappropriate because there's a fundamental due process problem there. The record is not being properly developed in a way for you to test substantial evidence because all substantial evidence is always wrong. I don't want you to take up too much of your rebuttal time. Thank you. Okay. You have two minutes and 19 seconds left, so we'll go to the union then. Thank you. Thank you. Excuse me, Your Honor. I've got a cough. I'd like to reserve four minutes. This is a surprise. Well, okay. We'll see. It's aspirational. Go ahead. State your name, please. My name is David Rosenfeld on behalf of the Petitioner and Intervenor Local 51, NABET. This is a surprising argument because I came fully prepared to argue the merits of the case on rebuttal, and counsel for the Petitioner hasn't even addressed the merits of the case. He's only really focused upon the union's petition for review, which I will just briefly address. And that is, he's correct. We did not address the jurisdictional issue in our opening brief because you didn't have to address it until after the reply brief because it wasn't raised. And he and the Board are correct that legacy health systems is the governing law in this circuit. So I had to find a way around it. Well, I guess I couldn't help, but there was time spent on that, and I think that the jurisdiction always does have to be addressed. But with Thrive, I'm just wondering, you're asking to go back and get a few more crumbs. If this Court hypothetically upheld what the Board did, it seems like the things that you're asking to go back on were already addressed. You're wanting to talk about leisure time or something like that with barbecuing with the family or things like that, but just trying to get a few more bucks out of Nexstar. It seems like you already won if the Board is affirmed. Well, Your Honor, I have to say you've accurately described our position. I think they're legally assertable. It's sort of important to understand that in bargaining, these bargainers spend a lot of their own free time in bargaining that turned out to be wasted. So you may describe it as sort of insignificant in light of the overall win. It is still a legally defensible position. Well, but didn't they get some — they did get something included in the Board. The Board added things to what the ALJ did, right, about time that they had spent doing it. So why would we think that they would get a little more? I mean, sometimes, you know, with unions and management, I sort of describe them as the usual suspects. No one's ever happy even when they appear to win. So I'm just wondering, you know, I understand what Thrive says, and it should be the Board in the first instance, but I'm just not seeing what if we were hypothetically — I'm only speaking to affirm the Board. It just seems like you're sucking the last drops of blood out that were already covered. Your Honor, I've been in front of this Court for years, and I don't want to mislead you. I don't disagree. If the Court reaffirms the decision, I'm satisfied and the client's satisfied. As you may remember, the District Court issued a 10-J injunction and ordered Nexstar back to the table. They bargained for a period of time until this Court reversed the 10-J injunction and suddenly stopped bargaining. We wouldn't get back to the bargaining table. So we're satisfied with a bargaining order that says get back to the bargaining table so that we can try to finish these negotiations. So why do you think that Nexstar had no right to inquire about the initiation fees you were charging to members? Because 40 years ago, the Board decided SEIU Local 535, which happens to be a case from my office, in which the Board unequivocally held that the amount of the initiation fee is a nonmandatory subject. Employers don't get to bargain over how much the union charges initiation fees or dues. They get to bargain about the process for collecting it through dues checkoff, but not the amount. And throughout the course of this bargaining, I know Mr. Katz, I think, is agreeing with me, they insisted that the amount of the initiation fee was an issue and kept insisting on bargaining about it. That's the distinction. You can draw a simple distinction. You know, unions get to bargain about whether supervisors do bargaining in a work, but we don't get to bargain about how much they pay the supervisors. Unions get to bargain about the grievance process, but we don't get to bargain about who the employer designates to be their grievance representatives. That's the clear line that SEIU 535 drew and which they went over in this case by this drumbeat of insisting on bargaining and offering, as Justice Nguyen pointed out, a benefit to the employees. We'll reduce your initiation fees. We're going to cut it down. We're bargaining it, and that's our promise to you. That was an offer of benefit. So that's the distinction, 535 40 years ago. Do you want to save the balance of your time? Yes. Do either of my colleagues want to ask Mr. Rosenfeld anything? All right. We'll reserve your three and a half minutes. Okay. Thank you. Okay. We'll go to the board now. Good morning. How are you? May it please the court, Barbara Sheehy for the National Labor Relations Board. Can you hear me okay? I just decided to put ear buds in, so I don't know if it affected the volume or if I'm too loud. We can. Okay. Great. Everyone seems to be nodding. Yes. Okay. Terrific. I should have done it earlier. Good afternoon where you are, Ms. Sheehy. It is. It is. It is. It's one party. Yes. So I'd like to start, I think, unless the court wants to start somewhere else. I want to start with the bad faith of bargaining allegation and sort of pick up, or the finding, rather, and pick up on this notion that the board somehow failed to take into the entire fabric of the negotiation. And I just want to take a step back. I know the reply brief focuses a lot on the union's conduct and where the un-for-labor practices were there and the information requests. And I'm going to address that. But before I do that, I think it's worth taking a step back and remembering the employer's conduct, because that should be the focus first, and then we can look at whether the union's conduct sort of counterbalanced that. So the board points out, and this is the substantial evidence underlying the bad faith bargaining finding, there's a history of violations. I don't think this court should forget. This is the fifth board order during the successor bargaining, during the bargaining of the successor agreement, the fifth order. It's the second one to come before this court. The other three, as far as I understand it, weren't taken on appeal. So there's a history of violations that the board recognizes. The board recognizes that this employer has taken at the table a position of inflexibility. Significantly, they never offered a proposal on wages after two and a half years of bargaining. There was never an employer-offered bargaining proposal on wages. So in the criminal sense, you accused Nexstar of having prior convictions, essentially. That sort of... I think under a totality-of-circumstances approach, the board looks at all of the factors on deciding whether, on this record, with all of these circumstances in the employer's words, and the entire fabric of negotiation, yes, past conduct is part of the equation. It's certainly not all of it, and it's certainly not the only evidence in this case. But board law has long held that a history of violations is relevant to the totality of the circumstances analysis on a bad faith bargaining violation. So certainly the board was... And I don't think the employer takes issue with that part of the test. It's not my understanding that they're saying that the board couldn't rely on this history of violation. So there's the history of the violations. There's the inflexibility at the table, which, from the employer's perspective, not offering a proposal on wages. And in fact, there's testimony from one of the employer's bargainers, negotiator's pouch, if I said his name correctly, testified that the strategy on the union's wage proposal was not to counter. It was to reject. The board finds that this is consistent with Nexstar insisting on its own proposal. There's the bad faith bargaining finding as to the union's healthcare proposal. There's a bad faith finding as it relates to undue delay on responding to the union's request. There's the constant focus on non-bargainable issues, the fees and the dues. There's the denigration of the union. There's the withdrawal of recognition. And there are the unilateral changes following the unlawful withdrawal. So that is the fabric of the employer's negotiation. On the counter side, I don't want to get too far into the weeds, but there are basically four requests for information that the employer is relying on. First, the boards, and then there are several other. There's also the bad faith allegations that the employer makes, and there's a coercion, and I think that's the sum and substance of the union's conduct. The board says, first and foremost, employer, we hear you, we hear all of the allegations you are relying on to show and to somehow counterbalance our finding a bad faith, and we do not find, this is the ALJ by adoption from the board, we do not find that that conduct overcomes the take it or leave it approach that substantial of it in the record is showing that the employer took. So that's the first position. The board goes farther than that and says, in any event, a lot of this conduct that you're relying on is the matter of settled charges. So we are not going to rely on that as a matter of policy. The board has taken the position that settled charges are not part of an affirmative defense, a valid affirmative defense, but there are also the unsettled conduct that the board looked at because there were several dismissals involved here. The employer focuses expressly, I think, in its reply brief on the request for information, and I would like to take the opportunity here because I don't think we had the words in our brief to contextualize it. This is all coming from public documents. The court can look at the charges off the board's website. There are four charges related to request for information. The first one came in July 2018. It had nothing to do with the bargaining of this contract. It had to do with whether the employer was seeking documents related to whether the union told employees not to sign corporate documents. It was a merit dismissal. So that is not something the board was going to allow the employer to rely on. The employer here is saying the board should have in this case. It has nothing to do with collective bargaining in this contract. The second request for information came in January 2019. I'm sorry, these are the charges, not the request for information. The second one was January 2019. Again, this is not related to the conduct of these negotiations. It was an information request relating to verifying statements that were made by the union negotiator in this case in a news article where she came forward and said that this employer is pocketing a bunch of money for shareholders at the expense of increased wages and severance for its employees. The employer in that charge was looking for information related to wages, proposals, and severance packages that it had made with the union and any other statements the union had made. It was clearly targeted at the veracity of the news article. The ALJ found a violation in that case, so that is a violation that the board considered because that was negative. That's not a settled case. It's not a dismissed case. It was a found violation. That's part of the board's analysis saying we've looked at the union's conduct. There was another charge or information request in July 2019 that had strictly to do with which employees have filled out initiation fee forms, BEC notices, which are the notices advising employees that they can just become agency dues-paying members as opposed to full freight dues. The employer wanted to see notices explaining the rights to revoke. The employer wanted to see notices regarding expired contract provisions, telling employees the contract expired, certain rights that expired with it. The employer was looking for documents establishing dues withholding amounts. This charge was settled, so, again, it's not something the board relied on. But even if the court wanted to look at that, the information that the employer was seeking had nothing to do with the collective bargaining. The amount of the fees, who signed them, is not part of anything the union was going to bargain or rightly had an obligation to bargain. And finally, the last request for information was the substance of a charge filed in September 2019. And this sought information about the union's group health care plan, which is a health care plan available to members only, and by members they mean full freight dues-paying members, which at the station there might be two different kinds of union members. There are people paying the full union dues, and there are people that may opt to pay just the agency fees. So this health care plan that the employer was seeking was not one that could have been applied to the entire unit because it doesn't necessarily apply to them. Again, that was another settled charge. So that's the information request that the employer is insisting that this court needs to consider to determine that the union's conduct somehow rose to the level of, again, all of those bad faith bargaining circumstances that I outlined before we got into the settled charges. So that's my response, long as it is, I think, to this notion that the board didn't take into account the entire fabric of negotiation. I think that's a woeful misunderstatement of what happened, and I think it, without getting into it. Do you think that the board considered all of the affirmative defenses that they have? Well, the affirmative defense was that the union engaged in unlawful conduct, and so I think, yes, the board considered that, and then specifically did look at the individual conduct that made up that allegation of bad faith bargaining. Absolutely. I think it's... Oops, sorry. In considering, in addressing some of the affirmative defenses, the board used, was very cursory. In one case, used one sentence. Does that matter in terms of evaluating the substance of the decision? I don't think it does, because I think it's only in, and I think we point this out on our brief. I sent a footnote, and I've forgotten which footnote it is. The board's consideration of certain of these defenses or certain of these allegations, I think it's sort of woven into various parts of the decision. So I think towards the end, I can maybe pull up, it's on the excerpts of the record. It's on page... I think this is the one sentence Your Honor is talking about, but I think it's... Let me see. It's on page 33 in the excerpts of the record, and that's where the one statement is that I think Your Honor is referring to, but I don't think it's fair to say that that's the only consideration the board did. For instance, I think I'm trying to mark a couple other pages here. There's a discussion of some of the affirmative defenses, or the conduct at the least. At least, it's not necessarily cast as an affirmative defense analysis, but it's the very conduct that the employer is relying on. There's some discussion in the second column on excerpts of record 29. There's additional discussion, excerpts of the record 31. I think some of the conduct is discussed there. I think that's all that I marked on my draft, but I don't think it's fair to say that it was a single sentence, or that the board somehow, that there isn't substantial evidence of the record, or there's not a sufficient enough discussion. I think what the board did is look at the overwhelming amount of evidence on the employer's side, and then did look at everything on the union side, and determined it's just not going to rise to that level of the conduct to excuse what the employer did at the table. What about the remand issue? With agencies, there have been, generally, they say that we're not supposed to do things. If we looked through the wrong lens was used, and there's a new standard that comes up, that generally, with agency things, they say, you can't just assume they wouldn't have done anything differently. You have to send it back. I see that, you know, probably part of it, as you're going to say, you said you've seen them five times already. One more time is not going to be the charm, necessarily, and that all of those things were considered. But there was a little bit of a wrong lens used here. So how do we look at that remand? Let me make sure I understand. Is Your Honor referring to the Thrive Damage issue? Yes. Okay. So I just want to make sure. I didn't want to go off on some other answer. I know. I probably wasn't as clear as I could have been. It's not you. No, no, that's okay. So our position on this would be that it wasn't actually viewed through the wrong lens. What the board did in Thrive was standardize an already existing remedy. What the board ordered in Thrive was as a matter of standard remedy, as a matter of the make-whole remedy, foreseeable damages flowing directly from pecuniary harm suffered directly from the unfair labor practice, is now a standard part of a make-whole remedy. It wasn't a new remedy. And there are two cases, I believe, in this circuit that I've argued, that the board, where the Thrive Damage issue is explained in those briefs, exactly what the board did in that case. It was not a new remedy. There's two cases. Macy's has been argued. Tracy Otto has only been briefed. But we've fully briefed that issue that it's not a new remedy. So the board, in deciding this case, could have ordered what has now been deemed or what is now everybody's calling Thrive Damages, and they opted not to. So I think I take issue just with the way the question is even cast, that it was sort of with a new lens. It's just different. The board now says it should be part of the standard analysis of make-whole remedy. But the board had at its disposal a Thrive remedy. Well, you did add remedies that the ALJ did not consider, right? Yes. You did compensate the union for time bargaining and things like that, that the ALJ had not ordered. Is that correct? That's correct. So the board certainly has shown in this case that it was willing to look beyond what the ALJ did. And, again, the type of damages awarded in Thrive are not new. It is new as a standardized remedy, but it's not new. So the board had then at its disposal, if it chose to, it could have added what we're now calling Thrive Damages, and it opted not to. So we would say remand is inappropriate. And I think I understood union counsel to, I don't want to say abandoning his Thrive argument, but I heard him to say they would be fine if the case was enforced as written. In considering the issue of remand, in addition to what the counsel for the union has stated, and Cascade is a Ninth Circuit example, but in many of the cases where an issue was raised with the circuit court that had not been presented in the motion for reconsideration, it was presented in the course of the proceedings. The union was demanding it, demanding it, and then there was a no by the board, and then the rule changed. Now, is that authority still in place? I believe it is, but I think the difference is, if I understand the question correctly, the difference is sometimes when there's a rule change, getting enforcement on a board decision, that, for instance, they call it a handbook violation. If the board has found a violation in a handbook, a particular provision is unlawfully coerced, and then in the meantime, while that case is pending in the circuit court, if the board reverses and says that's no longer anything we're going to consider coercive, the board in that circumstance, as far as I understand it, will sometimes go for remand because to get enforcement on a provision that the board now considers lawful doesn't make any sense because the remedy in the case that would be pending before the circuit court would be rescission. You would rescind the provision in the handbook. But if the board has now reversed and said that type of provision is lawful, what you have then is sort of an empty exercise where the court considers it, enforces the board order, the employer is told to rescind, and then the very next day can go back and reissue the handbook with the old rule, and now it's lawful. So I think it's a little bit different in that context than it is here, where the board had at its disposal the ability to award this type of damage and opted not to, and I don't think Thrive, even coming later, changes that. And I think, yeah, that's my question. Can I have you address the board's finding under 8C? If we find that the statements here are misleading and coercive but not an implied promise, which was what the board found, would we be creating a circuit split with the D.C. Circuit in light of their ruling in Trinity Services Group? I guess somebody could certainly make that argument. I'd have to look specifically at a way whether somebody could say this statement was sufficiently different from what was argued in the D.C. Circuit. So I don't want to say necessarily. It's really the finding of an implied promise in this particular case, and making that finding be board-sided to Trinity Services Group. Certainly, yes. It does suggest to me that the board's willing to adopt that broader interpretation of 8C, that Trinity Services Group stated. But on the other hand, there's a lot of support for the notion that statements can be coercive without really making an explicit threat or a promise. Certainly, but I don't think in this case the court needs to figure out how to draw that line. I think in this instance, with the employer's own words, multiple times on paper, telling employees misleading statements tied to the fact that the employer is going to change it, and it's the union that's the impediment to making any of these changes. But I think in that circumstance, I don't think this case is the one where the court needs to worry about whether is this a fine enough distinction. Is this really coercion, or is this coercion plus an implied promise? Our position is we look at the statements in this case through the substantial evidence lens and find that there was an implied promise or implied promises made. Absolutely, yes. And I think as we point out in the brief. And we don't create the potential problem with Trinity Services Group. That's right. I don't think the court needs to do that. I think, like I said, if this were a different set of facts, maybe I'd be more concerned about it. But I think a review of what was said to the employees, and there's not even a credibility issue. The employer's own words in the bulletins, what was told to employees. So I think Your Honor is correct. You can sort of sidestep any issue with that by just enforcing the board order. Well, counsel's argument is that these statements don't meet the substantial evidence test if the employer genuinely believed that the fees were exorbitant. How do you respond to that? So I think the response to that, and the board says this in its footnote. My eyes are so terrible these days. I think it's footnote three or four. It's on the first page of the decision. It's not just that they were misleading, or it's not that the employer had the defense that, hey, we really believed what we were saying. It's the statements coupled with the fact that the employer is telling employees it is bargaining over the issue, and the union is the impediment to it. So it's not that they're misleading. It's not that the employer truly believed that the fee was excessive. It's the combination of telling employees that the employer is the one that's the true protector of employee rights. Let me ask you a question. Do you think you have any rebuttal time? I do not, no. Okay. I do not believe that, and I've never done rebuttal. The posture of this, it's a little bit confusing. No, this is the one time you get to hear from me. That's it, for better or for worse. Right. It's only that one line on ER 2 that you're relying on, right, the repeated assailing of the amounts of the fees and dues and claim that it was part. It's that and part that creates the implied promise. Yes, yes. It's those two things together. Yes, absolutely. And I would point out the employer is not without recourse. If it truly believes that the initiation fee is excessive, the employer can file, anybody can file a charge. The employer can file a charge with the board challenging the fee is excessive. What it can't do is what it did here, tell employees wrongly that it was bargaining over the fee because it can't, and that the union was actually the one that was standing in the way of a lower fee. That's the issue.  And I think this will be the last thing I say. If I could just finish this one statement, it should take me 10 seconds. In fact, the employer, as part of some of its bad faith bargaining charges, challenged the fee, said the fee was too excessive. Those charges were dismissed. But again, it's welcome to use that still as a defense here because those were dismissed charges. But the employer has tried to challenge this fee once before. It can go back and do it again. And in those denial letters, which, again, I believe are public record on the board's website, the denial letter tells the employer that they have, that the board has, that the investigation has found otherwise, that these fees are not out of sync with some of the California. I'll give you your 10 seconds here. I'm sorry. Thank you so much. All right. Thank you for your argument. Thank you. All right. We'll go back to Mr. Katz. You don't have a lot of time left, so use it wisely. Oh, we can't hear you. You can hear me now. Sorry. Yes. A couple of essential points, and I'll, if the employer can file a charge to challenge the fee, it ought to be able to argue and back up that argument with evidence in the proceeding that the union was attempting to demand an illegal term in the contract. It was not allowed to do that, and it was not allowed to do that, not as a result of an adverse determination that is binding on it, but out of some kind of notion akin to law of the case or some kind of preclusion principle that the general counsel's refusal to pursue the charge or settlement somehow eliminates the issue. But fundamental to all varieties of preclusion in every jurisdiction is the notion that the party to be bound is a party to an earlier determination or imprivity with a party who will sufficiently defend their interest. That doesn't obtain here. Whatever preclusive effect these things have as between the union and the board has nothing to do with the employer's right to raise this as part of the fabric of negotiations because you may start with employer first, but you also have to get to the union's misconduct. You can't say employer first, and you know what, I think the employer is so egregious, I don't care what the union did. You're not allowed to do that. You have to hear employer first, then you have to hear the union conduct, and then the trier of fact can make a reasoned decision based on all of the information. Having had a reasonable opportunity for all of the information to come into the proceedings, this court is in a position to apply substantial evidence review. But with a due process defect that prevents all of the evidence coming in or a reasonable opportunity to put it in, this court's application of substantial evidence is distorted in the way I described when I was discussing that at the judgment. Final point is Mr. Rosenfeld said he didn't have to address the jurisdictional argument until replied because it wasn't raised. It was raised in Nextar's brief. That brief was filed a month before Mr. Rosenfeld's opening brief. There are file stamps on the brief. It's perfectly clear on the words. And with that, unless you want to keep me up, I will submit. Thank you, Mr. Katz. Okay. Did you have a question? Thank you, Mr. Katz. Mr. Rosenfeld, you have three-and-a-half minutes. I don't think I need it. Judge Consett, there's no need. Don't make a promise you can't keep. I'll try. Everyone keeps saying that, and then they keep going. Judge Nguyen will remember arguing about Thrive since she sat on the Macy's panel. Judge Consett, there is a fairly extensive discussion of the union's conduct at pages 33 through 34 of the judge's decision. There are some other references. And she explains why she doesn't think they merit consideration. So it's in the record. Substantial evidence supports that. It's kind of interesting. One of the issues that the employer asked for was in August of 2019, they said, we want to see what the union-only membership plans are. Only members can get them. And the record shows they asked for this on August 19, 2019, and demanded a response on the very same day. The document they asked for said, we want information the very same day. And the union didn't give and ultimately agreed to give it. But that was irrelevant to the employer's position of maintaining its own health care plan and then never giving the union the critical piece of evidence they need to evaluate it, which was how much was the union's — excuse me, how much was the employer's cost. I just want to go back to this issue of initiation fee. Effectively, what the employer was doing was saying, we're going to bargain a much lower initiation fee. Theoretically, the employer could have said, we're going to insist that the union agree to dues of $1 a month and $1 initiation fee, and say, we're going to make that commitment to you. That's what we're bargaining about, and we're going to obtain that. That's the promise of benefit. And that's what Local 535 seeks to prevent, that the employer stalls negotiations over a promise about how much the union will charge. And the record in this case does not reflect what the union's initiation fee would necessarily be. There's evidence it was three weeks of pay, but at one point the union actually waived the initiation fee. So there was no certainty what it would be, but the bottom line is that — I don't like that term. I think that in summary, the union and the employer don't get to bargain about the initiation fee, the amount. What we do get to bargain about and did bargain about is the employer can say, we won't even collect it. We're not going to agree to dues checkoff. It's your problem. That's a bargainable subject. The amount is not. And that's where the employer went, already in this case, by continually insisting on bargaining about it and going to the employees and saying, we're going to reduce your initiation fee, make it much smaller. We're protecting you. And that was the implied benefit. And for those reasons, the Court should enforce the Board's order. This is the fifth time, the second time in this Court, the Board said their conduct was egregious. And I'll just submit by saying I agree it was. Thank you. All right. Thank you all for your argument today. This matter will stand submitted.
judges: CALLAHAN, NGUYEN, Kronstadt